
EXHIBIT A

FILED
2017 MAR -6 AM 11:18
MECKLENBURG CO., C.S.C.
BY _____

STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
COUNTY OF MECKLENBURG | SUPERIOR COURT DIVISION
| 17-CVS-4091

HENDRICK AUTOMOTIVE GROUP,

Plaintiff,

vs.

TRUMBULL INSURANCE COMPANY, and HARTFORD FIRE INSURANCE COMPANY,

Defendants.

COMPLAINT

Plaintiff Hendrick Automotive Group, complaining of Defendants, alleges and says as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Hendrick Automotive Group ("HAG") is a New York general partnership with its principal office located in Mecklenburg County, North Carolina.

2. HAG owns and/or provides administrative management services to more than one hundred (100) automobile dealerships in twelve (12) states, and is the country's largest privately owned automobile dealership group. HAG also owns and provides administrative management services to a number of businesses that specialize in selling automobile accessories.

3. Defendant Hartford Fire Insurance Company ("Hartford Fire") is, upon information and belief, a Connecticut corporation with its principal place of business in Hartford, Connecticut.

4. Defendant Trumbull Insurance Company ("Trumbull") is, upon information and belief, a Connecticut corporation with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, Hartford Fire and Trumbull are both part of the Hartford Insurance Group, and in all respects pursuant to this Complaint acted in tandem to cause HAG's harm. For that reason, hereinafter, Hartford Fire and Trumbull are referred to collectively as "Hartford."

6. Hartford specializes is selling various types of insurance coverage.

7. This Court has jurisdiction over the parties and subject matter of this action.

1

8. Venue is proper in Mecklenburg County because HAG is located here.

9. The amount in controversy exceeds $25,000.

10. In the settlement of an underlying action (described more fully below), Hartford wrongly spread the loss across multiple HAG insurance policies for the sole purpose of charging HAG with two deductibles (rather than one). This action is to recover the $350,000 wrongly charged by Hartford to HAG, and to recover treble damages and/or punitive damages, and attorneys' fees from Hartford for its unfair trade and bad faith insurance settlement practices, all as described more fully below.

## FACTUAL ALLEGATIONS

### *The Underlying Action*

11. HAG owns and provides administrative management services to Hendrick Chevrolet, LLC, d/b/a Rick Hendrick Chevrolet ("Hendrick Chevrolet"), an automobile dealership located in Duluth, Georgia.

12. HAG also owns and provides administrative management services to HC Parts, LLC ("HC Parts"), a business known in the industry as an Accessory Distribution Installer, (ADI, for short), that specializes in stocking, selling, and installing automobile accessories compatible with General Motors vehicles.

13. HC Parts operates out of a warehouse located in Duluth, Georgia, which is separate from the facility which houses Hendrick Chevrolet.

14. In 2011, Hendrick Chevrolet and HC Parts hired Clarence Adams ("Mr. Adams") as a joint employee. Mr. Adams' job duties primarily involved delivering automobile accessories (from HC Parts) and automobile parts (from Hendrick Chevrolet) to various customers of those businesses.

15. While Mr. Adams received his paycheck and benefits directly from Hendrick Chevrolet, HC Parts paid 25% of those employment and benefit expenses at all times pertinent to this Complaint.

16. For years, Mr. Adams made deliveries for Hendrick Chevrolet and HC Parts, and often performed his employment duties from or at the HC Parts warehouse.

17. On April 23, 2013, Mr. Adams was seriously injured at the HC Parts warehouse, while working in the course of his employment (the "Accident").

18. Following his injury, Mr. Adams brought claims against Hendrick Chevrolet under the Georgia workers' compensation act.

2

19. Mr. Adams then brought a lawsuit in the State Court of Gwinnett County, Georgia, bearing case number 2014-C-05726-6, against HC Parts, and various others, asserting claims for negligence (the "Underlying Action").

20. To avoid application of the exclusive remedy provisions of the Georgia workers' compensation act, Mr. Adams' complaint pled his claims against HC Parts as if Mr. Adams were solely an employee of Hendrick Chevrolet, and not an employee of HC Parts. Had he not done so, his Complaint against HC Parts would have been subject to immediate dismissal on its face.

21. While HC Parts asserted in the Underlying Action that the claims against it (and a co-employee) were barred by the exclusivity provisions of the Georgia workers' compensation act, the claims asserted in the Underlying Action were ultimately settled with Hartford's participation and approval.

*The Hartford Insurance Policies*

22. Effective for the year beginning August 30, 2012, HAG purchased a comprehensive insurance package from Hartford, to insure HAG and its subsidiaries and affiliates against the myriad of claims that can arise with respect to the ownership and operation of businesses that sell automobiles, and automobile parts and accessories.

23. As part of the comprehensive insurance package Hartford sold to HAG, Hartford provided HAG with a Workers Compensation and Employers Liability Insurance Policy (the "WC and EL Policy"). As the name suggests, the WC and EL Policy contains two main coverage grants – part one contains workers compensation insurance (the "WC Coverage"), and part two contains Employers Liability Insurance (the "EL Coverage").

24. The WC and EL Policy was negotiated and entered into in North Carolina.

25. The EL Coverage is subject to a $1 million limit of liability.

26. The WC Coverage and EL Coverage share a single $350,000 deductible per Loss Event, which is defined as "all bodily injury to one or more employees in any one accident."

27. The EL Coverage provides, in pertinent part:

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident ...

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3

3. Bodily injury by accident must occur during the policy period.

4. ...

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recover is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

...

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

...

### D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

...

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

28. As part of the comprehensive insurance package Hartford sold to HAG, Hartford also provided HAG with a Commercial General Liability Policy (the "CGL Policy").

29. The CGL Policy was negotiated and entered into in North Carolina.

30. The CGL Policy is subject to a $2 million limit of liability.

4

31. The CGL Policy is subject to a $350,000 deductible per Occurrence, which is defined as an accident.

32. The CGL Policy provides, in pertinent part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" .. to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" ... to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ...

...

2. **Exclusions**

    This insurance does not apply to:

    ...

    **d. Workers' Compensation and Similar Laws**

    Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law

    **e. Employer's Liability**

    "Bodily injury" to:

    (1) An "employee" of the insured arising out of and in the course of:
       a. Employment by the insured; or
       b. Performing duties related to the conduct of the insured's business; ...

    ...

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

...

33. The CGL Policy further provides, in pertinent part:

**SECTION II – WHO IS AN INSURED**

...

**2. Employees and Volunteer workers**

Your ... "employees" ... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, none of these "employees" ... are insureds for:

(1) "Bodily injury" ...

    (a) To ... a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business ...

    (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; ...

34. The CGL Policy further provides:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

...

**8. Transfer Of Rights Of Recovery Against Others To Us**

    a. If the insured has rights to recover all or part of any payment ... we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

35. Pursuant to the CGL Policy, "Bodily injury" means physical injury sustained by a person.

36. Upon information and belief, when Hartford issued the WC and EL Policy to HAG, it calculated the premium charged to HAG pursuant to a complicated formula that

6

considered the number and nature of the various employees of HAG and its affiliates and subsidiaries.

37. When Hartford first issued the WC and EL Policy, it knew and understood that HC Parts did not directly pay employment related expenses related to Mr. Adams, or to any other individuals that provided employment services to HC Parts. Upon information and belief, Hartford therefore calculated the premium to be charged to HAG for all employees that provided services to HC Parts, including Mr. Adams.

38. Upon information and belief, had Hartford not considered Mr. Adams, or other individuals that provided services to HC Parts to be employees of HC Parts, Hartford would have charged a lower premium to HAG for the WC and EL Policy.

39. In performing an audit of Hendrick Chevrolet pursuant to the WC and EL Policy, Hartford's auditor specifically stated:

> Note: The insured is working toward adding all of the Georgia locations to the Rick Hendrick, Chevrolet, Inc. payroll
>
> ...
>
> Auto Accessories / HC Parts – Included for the entire policy period

40. As acknowledged and admitted by Hartford's own auditor, HC Parts' employees were paid by Hendrick Chevrolet.

41. Upon information and belief, even though HC Parts did not directly pay employees, in calculating HAG's premium, Hartford included all employees that provided services to HC Parts, together with Hendrick Chevrolet. That calculation specifically included Mr. Adams, and it was made clear to Hartford that Mr. Adams was a shared employee that provided substantial services for HC Parts.

42. As set forth above, following the Accident, Mr. Adams asserted his right to recover workers compensation benefits, which benefits were timely and properly provided by Hartford pursuant to the WC Coverage.

*The Coverage Dispute*

43. Upon being served with the Complaint in the Underlying Action, HAG or its agent forwarded the Complaint to Hartford, and requested a defense and coverage pursuant to the EL Coverage part of the WC and Employers Liability Policy for HC Parts and the co-employee also included as a defendant in the Underlying Action.

44. Hendrick did so for at least the following reasons, which met all express conditions for coverage for the claims asserted in the Underlying Action:

> a. Mr. Adams was an employee of HC Parts (an insured party under the WC and EL Policy);

7

b. He suffered a bodily injury;

   c. The bodily injury arose out of and in the course of his employment with HC Parts;

   d. Mr. Adams' employment was necessary to HC Parts' work in Georgia;

   e. The bodily injury occurred during the policy period at issue;

   f. The bodily injury was caused by the conditions of his employment;

   g. The Underlying Action was brought in the United States of America; and

   h. The bodily injury occurred by accident.

45. Furthermore, as required for EL Coverage to apply, even though HC Parts was Mr. Adams' employer, the Complaint filed in the Litigation claimed damages from HC Parts in a capacity other than as his employer. As expressly set forth in the EL Coverage grant, Hartford was required to pay for all claimed damages, up to the limit of liability, because of bodily injury to Mr. Adams that arose out of and in the course of his employment, claimed against HC Parts in a capacity other than as employer.

46. For at least these reasons, Hartford was required, pursuant to the EL Coverage grant, to defend the Underlying Action, and pay damages up to and including the limit of liability, in resolution of the claims in the Underlying Action.

47. The WC and EL Policy contains no exclusions which bar coverage for the claims asserted in the Underlying Action.

48. Rather than properly defend and indemnify HC Parts (and the other HC Parts employee included as a defendant) pursuant to the express language of the EL Coverage grant, Hartford instead denied coverage under the EL Coverage, and chose to provide a defense and coverage for HC Parts pursuant to the CGL Policy. It did so, it said, due to the manner in which the plaintiffs' attorney in the Underlying Action pled the claims.

49. Of course, the language of the complaint in the Underlying Action is not dispositive of Hartford's duty to indemnify HAG and HC Parts. Hartford knows this and knew this at all times relevant to this Complaint.

50. By choosing to "find" coverage under the CGL Policy rather than the EL Coverage, Hartford charged HAG/HC Parts with a second $350,000 deductible for the same Loss Event that triggered coverage under the WC Coverage grant.

51. In fact, the language of the CGL Policy makes clear that coverage properly falls under the EL Coverage grant.

8

52. Hartford did not conduct a good faith analysis of its obligation to defend and indemnify HC Parts under the EL Coverage grant.

53. HAG, for itself and on behalf of HC Parts, disputed Hartford's coverage determination, and provided Hartford with ample evidence, including, but not limited to the express language of the EL Policy itself, Hartford's own premium and audit work and calculations, and a host of factual matters that all clearly show that Mr. Adams was an HC Parts employee.

54. Hartford ignored all of the facts at hand, not to mention the express language of its policies, to force coverage into the CGL Policy.

55. The only reason Hartford did so was to enable it to charge Hendrick with a second deductible of $350,000.

56. HAG brings this action to recover the $350,000 wrongfully charged by Hartford, and to also recover treble its actual damages and/or punitive damages and its reasonable attorneys' fees associated with Hartford's wrongful and bad faith conduct.

57. To the extent that Hendrick Chevrolet and/or HC Parts are the proper parties to assert any of the claims herein against Hartford, Hendrick Chevrolet and HC Parts have assigned those claims to Hendrick.

### FIRST CLAIM FOR RELIEF
[Breach of Contract]

58. HAG realleges and incorporates by reference the allegations contained in the preceding paragraphs.

59. The WC and EL Policy is a valid and enforceable contract supported by valid and adequate consideration.

60. HAG complied with all of its material duties and obligations under the WC and EL Policy.

61. Hartford materially breached the WC and EL Policy by failing and refusing to provide HC Parts (and Mr. Adams' co-employee) with a defense and indemnity under that contract for the claims asserted in the Underlying Action.

62. As a direct and proximate result of Hartford's material breach of contract, HAG was charged, and paid through defense and settlement expenses, a second deductible of $350,000 for which it otherwise would not have been responsible to pay.

63. HAG is therefore entitled to recover $350,000, plus interest at the legal rate from the date of Hartford's breach, plus all other damages to which HAG is entitled.

9

## SECOND CLAIM FOR RELIEF
[Unfair Trade Practices – N.C. Gen. Stat. § 75-1.1 *et seq.*]

64. HAG realleges and incorporates by reference the allegations contained in the preceding paragraphs.

65. As set forth above, Defendants intentionally and wrongfully forced coverage for the Underlying Action into the CGL Policy even though it knew that coverage rightfully fell directly within the EL Coverage grant. It did so for the sole purpose of charging HAG with a second $350,000 deductible arising from the same Loss Event, and it did so after pocketing additional premium from HAG specifically with respect to the various HC Parts employees, such as Mr. Adams, that it knew were directly paid by Hendrick Chevrolet even for time spent performing employment related tasks for HC Parts.

66. Under Hartford's own analysis, if Mr. Adams should not be considered an employee of HC Parts, Hartford acted wrongfully in charging HAG additional premium under the WC and EL Policy to cover Mr. Adams and HC Parts' other employees.

67. Worse, in both the WC and EL Policy and the CGL Policy, Hartford required HAG to assign to it the ability to bring subrogation claims:

From the EL Coverage:

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

From the CGL Policy:

### 8. Transfer Of Rights Of Recovery Against Others To Us

a. If the insured has rights to recover all or part of any payment ... we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

68. Pursuant to the above-quoted language, Hartford had HAG's right to recover all payments made under the WC and EL Policy (on behalf of Hendrick Chevrolet) from the CGL Policy (on behalf of HC Parts) or vice versa. Doing so would have been in keeping with the separations of insureds clauses in the policies at issue.

69. Of course, Hartford refused to recover from one policy/insured on behalf of the other, because doing so would have consolidated the total loss under one policy, and one

10

$350,000 deductible. Instead, Hartford chose to pay portions of the loss under each policy, to force HAG to pay two deductibles.

70. Hartford's conduct constitutes *per se* violations of N.C.G.S. §§ 58-63-10 and 58-63-15(11)(a, b, d, and m).

71. Hartford's actions were in bad faith, and constitute substantial aggravating factors to its material breach of the WC and EL Policy.

72. Hartford's actions were in and affecting commerce.

73. Hartford's actions were unfair and deceptive within the meaning of the Unfair Trade Practice Statute, N.C.G.S. § 75-1.1, *et seq*.

74. As a direct and proximate result of Hartford's unfair trade practices, HAG has been damaged in the amount of at least $350,000, as set forth above.

75. As a result of Hartford's conduct, HAG is entitled to recover its actual, consequential and incidental damages, plus treble damages pursuant to N.C.G.S. § 75-16, as well as its reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.1.

## THIRD CLAIM FOR RELIEF
[Insurance Bad Faith]

76. HAG realleges and incorporates by reference the allegations contained in the preceding paragraphs.

77. As set forth in detail above, Hartford refused to pay $350,000 of the defense and settlement costs associated with the claims raised in the Underlying Action pursuant to the EL Coverage grant. It did so in bad faith, forcing coverage into the CGL Policy for the sole purpose of charging HAG with a second, unnecessary $350,000 deductible.

78. Hartford then acted in bad faith by not "recovering" payments made under one policy from the other, as was its right, assigned by HAG. Again, it did so for the sole purpose of improperly charging HAG with a second $350,000 deductible.

79. Hartford did all of this despite charging HAG premium specifically associated with providing coverage for individuals providing employment services to HC Parts – such as Mr. Adams – in issuing the WC and EL Policy.

80. Hartford's conduct is tortious, in bad faith, and is aggravating and outrageous under North Carolina law, in that the conduct was willful, wanton, and in conscious disregard of its duty to pay HAG's insurance claim under the EL Coverage grant.

81. As a direct and proximate result of Hartford's bad faith conduct, Hartford should be required to pay HAG not only the $350,000 second deductible wrongly charged to HAG, but

11

also punitive damages pursuant to N.C.G.S. § 1D-1, *et seq.*, for its willful, wanton, intentional and malicious conduct.

## PRAYER FOR RELIEF

WHEREFORE, HAG respectfully requests that the Court enter judgment:

1. Awarding HAG at least $350,000 of actual damages for Hartford's breach of contract, unfair trade practices, and bad faith insurance practices, plus interest;

2. Awarding HAG reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.1 and all other applicable North Carolina law;

3. Awarding HAG treble damages pursuant to N.C.G.S. § 75-16;

4. Alternatively, awarding HAG punitive damages pursuant to N.C.G.S. § 1D-1, *et seq.*

5. Taxing the costs of this action be taxed against Hartford;

6. For a trial by jury; and

7. For all such other and further relief that the Court deems just and equitable.

This the 6th day of March, 2017.

JAMES, McELROY & DIEHL, P.A.

Adam L. Ross
600 South College Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: aross@jmdlaw.com
*Attorneys for Hendrick Automotive Group*