UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00198-MOC-DSC

| | |
|---|---|
| **HENDRICK AUTOMOTIVE GROUP,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **HARTFORD FIRE INSURANCE COMPANY** | ) |
| **TRUMBULL INSURANCE COMPANY,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on cross-motions for summary judgment, including plaintiff Hendrick Automotive Group's ("HAG's") Motion for Summary Judgment (#19) and defendants' Trumbull Insurance Company's and Hartford Fire Insurance Company's (collectively "Hartford's") Motion for Summary Judgment (#20).

**FINDINGS AND CONCLUSIONS**

**I.     Background**

**A.     Nature of this Action**

In this action, the Court is asked to resolve a dispute between an insured, HAG, and its insurer, Hartford, concerning whether payment by the insured of two deductibles for the same occurrence was a breach of the comprehensive insurance agreement entered into by the parties. The issue is framed in terms of a breach of contract, and HAG contends that Hartford breached its duty to defend under the Employer Liability Policy ("EL Policy") when Hartford denied a defense under the EL Policy and instead defended the claim under

-1-

the Commercial General Liability Policy ("CGL Policy"). Inasmuch as HAG had already paid the claimant under the Worker Compensation Policy ("WC Policy") based on the same Loss Event or Occurrence, HAG ended up paying two $350,000.00 deductibles. For the reasons that follow, the Court determines that it was a breach of the EL Policy not to defend under that agreement and that HAG is entitled to a refund of the second $350,000.00 deductible.

### B. The Underlying Claim

Clarence Adams ("Mr. Adams") was an employee of HAG, working for Hendrick Chevrolet and HC Parts in Georgia, both of which are owned by HAG. In the course of his duties, Mr. Adams was severely injured at the HC Parts warehouse in Georgia.

While Mr. Adams was unfortunate in that he was injured on the job, he was fortunate in securing excellent legal representation. Through such capable representation, Mr. Adams first received a substantial settlement of his worker's compensation claim under the HAG's WC Policy, which was issued by Hartford. He then successfully brought a civil claim from which he received another substantial settlement, which was funded by HAG's CGL Policy, which was also issued by Hartford. In accordance with the policies of insurance which funded the settlements, HAG paid a $350,000.00 deductible under the WC Policy when the worker's compensation settlement was paid to Mr. Adams and then paid a second deductible of $350,000.00 under the CGL Policy when the civil action was settled.

HAG contends that the second deductible should be refunded as the settlement should have been paid under the EL Policy, under which it requested a defense, not under the CGL Policy.

## II. Undisputed Facts

### A. The Policy

As part of the comprehensive insurance package sold to HAG, Hartford issued a Workers Compensation and Employers Liability Policy ("WC/EL Policy" and, at times, "WC Policy" and "EL Policy") and a Commercial General Liability Policy ("CGL Policy"). The WC/EL Policy has a limit of liability of $1,000,000.00 per accident and imposes a $350,000.00 loss reimbursement deductible of $350,000.00 per "Loss Event." A Loss Event is defined as "all bodily injury to one or more employees in any one accident." The CGL Policy has a limit of liability of $2,000,000.00 and imposes a $350,000 deductible for any one "Occurrence." An Occurrence is defined as an "accident."

### B. The Loss Event or Occurence

Mr. Adams was employed as a delivery driver who delivered parts and accessories for Hendrick Chevrolet and HC Parts, both of which are owned by HAG. He received his paycheck from Hendrick Chevrolet, but for accounting purposes, HC Parts paid 25% of his wages and benefits. Mr. Adams work included working in the HC Parts warehouse, where on April 23, 2013, he was injured in a forklift accident. The forklift was being operated by another HC employee and both employees were working within the course and scope of their employment with HAG and its subsidiaries. Mr. Adams brought claims for his

injuries against Hendrick Chevrolet under the Georgia Workers Compensation Act and Hartford paid the resulting workers compensation claim under the WC/EL Policy and HAG paid the $350,000.00 deductible.

### C. The Underlying Civil Action

The following year, Mr. Adams filed a civil action against HC Parts and others. In that action, he asserted claims of negligence, premises liability, and *respondeat superior* against HC Parts and his fellow employee who was operating the forklift. In what can only be described as creative pleading, Mr. Adams alleged in that action that he was an "invitee" on the premises of the HC Parts warehouse at the time of the accident and that he was there on behalf of his employer Hendrick Chevrolet. Despite actually deriving 25% of his wage and benefits from HC Parts, Mr. Adams pled that he "is not and was not at any point employed by Auto Accessories / HC parts, LLC." In its Answer, HC Parts pled the bar of the exclusive remedy provisions of the Georgia Workers Compensation Act.

Inasmuch as such lawsuit generated a claim, Sedgwick Claims Management Services, Inc. ("Sedgwick"), a third-party administrator chosen by HAG which handled Mr. Adams' WC claim, submitted a claim to Hartford. On July 20, 2015, Sedgwick requested a defense and coverage pursuant to the EL Coverage portion of the WC/EL Policy. Hartford accepted the claim, but on or about July 28, 2015, a reservation of rights letter was prepared concerning coverage. Hartford agreed to provide a defense for HC Parts and the co-employee who caused the accident pursuant to the CGL policy, due to the

allegations of the complaint that HC Parts and Roberts were third-party-tortfeasors and not in an employer/employee/co-employee relationship with Mr. Adams.

In August 2015, at Hartford's direction, Sedgwick closed the EL claim file and transferred all payments and expenses to a General Liability ("GL") claim file. Hartford also held a telephone conference with HAG and Wells Fargo, HAG's insurance broker, regarding Hartford's coverage position in the Underlying Action. Hartford inquired as to why the Underlying Action initially had been opened as an EL claim, and was informed that, when HAG submitted the claim to Sedgwick, HAG indicated that Mr. Adams was looking to pursue a claim under the EL portion of the WC/EL policy.

It is undisputed HC Parts maintained in the Underlying Action that Mr. Adams was a joint employee of HC Parts and Hendrick Chevrolet, such that Mr. Adams was prohibited from recovering in tort due to the exclusive remedy provision of the applicable workers compensation laws. After conducting discovery, on June 30, 2016, HC Parts and the coworker moved for summary judgment in the Underlying Action on the grounds that Adams' complaint was barred by the exclusive remedy provision of workers compensation laws.

On September 22, 2016, the Georgia trial court ruled from the bench on HC Parts and Roberts' motion for summary judgment, denying the motion citing remaining questions of fact as to whether Mr. Adams could also be considered an employee of HC Parts. A written Order was issued on September 26, 2016.

On December 2, 2016, Hartford issued a letter responding to HAG's request for coverage for the Underlying Action, and finding that coverage was triggered under the CGL policy, but not the WC/EL policy. Later that month, Wells Fargo sent a letter to Hartford on behalf of HAG, outlining the factual and legal support for HAG's position that the Underlying Action should be covered under the EL policy.

### D. The Settlement Under the CGL policy

The claims asserted in the Underlying Action as to HC Parts and the coworker were settled at mediation for $1.4 million with Hartford's participation and approval. No judicial decision as to whether Mr. Adams was also an employee of HC Parts was ever made. The parties here agree that such issue was set aside so that the issue of exposure could be resolved. Hartford issued payment to Mr. Adams for the settlement pursuant to the CGL policy. In accordance with the terms of that policy, HAG paid the $350,000 deductible.

## III. Summary Judgment Standard Generally

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In this case, cross-motions for summary judgment have been filed. Where cross motions for summary judgment are filed, such motions are

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must

> be disposed of by a plenary trial and not on summary judgment.
>
> In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury.

Wright & Miller, 10A Fed. Prac. & Proc. Civ.3d § 2720. The parties have, however, stipulated that the Court may resolve any remaining issues of fact and they agree to be bound by this Court's resolution of the cross-motions for summary judgment without further recourse.

**IV.     Discussion**

    **A.     Initial, Equitable Concerns**

It is difficult to comprehend how Mr. Adams could not be considered as an employee of HC Parts as it is undisputed that both Hendrick Chevrolet, against which the WC claim was made, and HC Parts, against which the EL or CGL claim was made, are wholly owned by HAG. It is, however, understandable why the parties agreed to table the issue of whether HC Parts was an employer of Mr. Adams during the Georgia litigation in favor of settlement: resolution of that issue in the courts of Georgia could have cost the parties an additional $4,500.000.00 (based on estimates of what a jury could have awarded), while revisiting the issue in this forum limits exposure to $350,000.00.

From the outset, the Court is concerned with the amount of the settlement in the Georgia action: $1,400,000.00. The trouble with that amount is that it exceeds the policy limits of the EL Policy by $400,000.00. Thus, if this action had remained under the EL Policy, as HAG argues, HAG might not have had to pay the $350,000.00 deductible, as it

-8-

had already paid $350,000.00 for the Loss Event under the WC portion of the policy. However, had the claim been defended under the EL Policy, HAG would have had to fund $400,000.00 of the $1,400,000.00 settlement as it exceeded the policy limits. Thus, Hartford's decision to switch coverage from the EL Policy to the CGL Policy during the course of the Georgia litigation ultimately saved HAG $50,000.00. While HAG repeatedly argues in its Motion that such decision was "self-serving," that argument is difficult to accept when, in the end, it resulted in a windfall for HAG.

The equities are not, however, what the parties have asked this Court to resolve. Rather, the question presented is whether Hartford breached the contract of insurance by refusing to provide a defense under the EL Policy.

B. **Breach of Contract Standard**

While the events and claims underlying this action all occurred in Georgia, North Carolina law governs this breach of contract action inasmuch as the comprehensive insurance package was negotiated and entered into in North Carolina. Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000). Thus, this Court will apply North Carolina contract law to this insurance dispute.

An insurance policy is a contract, and its terms govern the parties' rights and duties. Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380 (1986). "As with all contracts, the object of construing an insurance policy 'is to arrive at the insurance coverage intended by the parties when the policy was issued.'" Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 9 (2010). Where the language of a contract reads clearly and

unambiguously, the Court must enforce the contract as written. Allstate Ins. Co. v. Chatterton, 135 N.C. App. 92, 518 S.E.2d 814, 816 (1999).

Provisions of an insurance policy which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction. State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538 (1986). If ambiguity is found in a policy of insurance, that ambiguity must be construed in favor of granting coverage to the insured. Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 240 (1967).

### C. Duty to Defend

Under the EL Policy, coverage is provided to defend and indemnify HC Parts for "bodily injury by accident:" (a) to an employee which arises "out of and in the course of the injured employee's employment by you," (i.e. by HC Parts); (b) for employment "necessary or incidental to your work" in a number of states including Georgia; (c) which occurs "during the policy period;" and (d) where any original suit and related legal action for damages is brought in the United States or Canada. WC/EL Policy (#14, Ex. 2, pp. 2-3, Sections A and D). The EL Coverage extends to damages HC Parts has to pay "[b]ecause of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer." Id., Ex. 2, p. 3, Section B.4.

Under those terms, the parties are in agreement that: Mr. Adams suffered a bodily injury by accident while working in the course and scope of his employment; the accident and injuries occurred in Georgia during the policy period; and the Underlying Action was brought in Georgia state court within the United States. Reading the WC/EL Policy as

required under North Carolina law, the plain language of the EL Coverage extends coverage for bodily injury to any HC Parts employee arising out of his employment even if alleged against HC Parts "in a capacity other than as employer." Id. Even though Mr. Adams artfully pled his claims in terms of "premises liability" and "*respondeat superior*," it is clear that those claims arose from his employment.

The only issue in dispute under the EL Coverage is whether Mr. Adams' employment was "by you," which requires determination of whether Mr. Adams was, at the time of the accident, an employee of HC Parts such that his claims arose out of his employment with HC Parts. While it is undisputed that Hartford did in fact defend the civil action under the CGL Policy, HAG contends that it was a breach of the contract under the WC/EL Policy not to defend under that policy as it was readily apparent that Mr. Adams was an employee of HC Parts at the time of the Loss Event.

Since an insurer's duty to defend is broader than its duty to indemnify, Pulte Home Corp. v. Am. S. Ins. Co., 185 N.C. App. 162, 166 (2007), that duty does not end with a review of the four corners of a complaint and the language of the policy. Westfield Ins. Co. v. Nautilus Ins. Co., 154 F. Supp. 3d 259, 264 (M.D.N.C. 2016). Rather, those are the starting points, and the insurer has a duty to investigate allegations in a complaint, even those which at first reading may lead the insurer to conclude that coverage is lacking in discharging its duty to defend. Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 (1986). Here, it appears that Hartford breached its duty to defend when it decided to no longer defend under the EL Coverage provided by the WC/EL Policy. Such

determination was clearly informed by the allegations of the Complaint that Mr. Adams was not an employee of HC Parts. See Stipulations of Fact (#14) at ¶ 38. Here, Hartford could have easily ascertained that: HC Parts was responsible for 25% of Mr. Adams pay and benefits; Mr. Adams routinely worked in the HC Parts warehouse where he was injured,; and that he ferried HC Parts in his delivery truck. Indeed, in calculating HAG's premium, Hartford had in its hands the Premium Audit Report that clearly showed HC Parts employees and Hendrick Chevrolet employees were all paid out of the same pocket, with the same EIN. Perhaps most confounding is the fact that Hartford *knew* Mr. Adams was an HC Parts employee because it had within close temporal proximity paid his workers compensation claim under the same WC/EL Policy.

While North Carolina law imposed on Hartford a duty to investigate beyond the Complaint and the WC/EL Policy, it is readily apparent that such search did not include Hartford's own file cabinet were facts requiring a defense under the WC/EL Policy would have been readily found. Hartford clearly knew that the insurance coverage it afforded under the WC/EL Policy applied to all HC Parts employees – including Mr. Adams – regardless of the fact that HC Parts employees were paid by Hendrick Chevrolet. Indeed, its own Audit Report recognized this fact: "The insured is working toward adding all of the Georgia locations to the Rick Hendrick, Chevrolet, Inc. payroll …Auto Accessories / HC Parts – Included for the entire policy period." Stipulation of Facts (#14) at ¶ 22, Ex. 3, p. 3. The Court concludes that Hartford had a duty to defend Mr. Adams claims under the EL Policy and that its failure to do so, where it could have readily and reasonably

ascertained facts that would have established that Mr. Adams' claims would have been covered by its EL Policy, is a breach of that duty. Bruce-Terminix Co. v. Zurich Ins. Co., 130 N.C. App. 729, 736-737, (1998).

### D. Duty to Indemnify

The contract of insurance carries with it two key duties for an insurer: to defend and to indemnify. Having found that the duty to defend was breached, the Court need not reach the issue of whether Hartford breached its duty to indemnify.

> Under North Carolina law, if an insurer improperly refuses to defend a claim, it is estopped from denying coverage and must pay any reasonable settlement--even if it made an honest mistake in its denial.

Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrams, P.A.), 605 F.3d 238, 241 (4th Cir. 2010). By failing to defend under the EL Policy, Hartford is as a matter of law liable to pay any reasonable settlement in full and since Hartford was a party to that settlement, Hartford is also estopped from arguing that it was unreasonable. Thus, HAG is entitled to a refund of the $350,000.00 deductible improperly assessed under the CGL Policy in the settlement of Mr. Adams claim.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff Hendrick Automotive Group's Motion for Summary Judgment (#19) is **GRANTED**, defendants' Trumbull Insurance Company's and Hartford Fire Insurance Company's Motion for Summary Judgment (#20) is **DENIED,** and **SUMMARY JUDGMENT** is entered in favor of plaintiff and against defendant in the amount of $350,000.00, and this action is otherwise **DISMISSED**.

The parties shall bear their own expenses, fees, and costs associated with the prosecution and defense of this litigation.

Signed: April 9, 2018

Max O. Cogburn Jr.
United States District Judge